Thank you, Your Honor. May it please the Court, my name is Kyle McNew. I represent the appellants in this case, Mr. Hodges, Mr. Bond, and Mr. Spangler. With the Court's indulgence, I would like to reserve four minutes of my time for rebuttal. When I was preparing for this case, it struck me as a case that, as a law clerk, I didn't terribly enjoy because it's so heavy on record and sort of short on esoteric or mind-bending questions of substantive law. But it is an important case because it gets to an issue that occurs in pretty much every civil case we see in the federal courts, and that is this question of how far can a court sitting in summary judgment go in weighing the evidence under the guise of determining whether there is a genuine dispute of material fact? There's no question here that there is a dispute of fact here. There's no question that it is a material fact. Where this fire started is a heavily material fact. So the question is, is it a genuine dispute? And it is our submission that there is a genuine dispute and that the district court erred in weighing evidence and finding that there is what's not a genuine issue of fact. I believe it's important to start with what we know and drill down from there. We know that when we're dealing with this kind of industrial process where we're having this aluminum dust and aluminum fines that are being stored in a baghouse, we know that fires and explosions are a real material occurrence. They're not just some remote possibility. They happen more often than one would think, so much so that there's standards on exactly what to do to prevent them. And, in fact, that's why we're here in the first place. That's why LCM was brought in to clean out the ductwork in this facility is that there was a baghouse explosion at Federal Mogul's facility in Italy. So that's what prompted them to bring people in to check out this thing. And so we know that these fires are not some remote possibility. These kinds of events are a real concern. And so we know that the industry standards say you have to do something to contain it. You're not going to be able to really prevent it, so you've got to do something to contain it. And so that's why the NFPA standards have certain... I have a question about the experts that were excluded. Yes, ma'am. Was the entirety of the experts' reports excluded? No, ma'am, Your Honor. Their opinions on cause and origin were excluded. What's left? What's left is the design, the adherence to industry standards, defect, and proximate causation. Proximate causation is left? Yes, ma'am. Okay. Where can I find that in the record? Proximate causation is found at... It's again found in Mr. Schloss' testimony about what his report and his testimony about what happens when there is an explosion. I guess what I mean is not where Mr. Schloss' testimony is, but where the court ruled, okay, your experts are excluded on these opinions, but they could still testify as to proximate causation, design, and defect, and all of that. I don't think the court ruled that at all, Your Honor, because the court never got to it. But what the court ruled... Because the way I read this, I mean, at least the way it looks to me, and maybe it's because, as you said, the court never got to it. Based on the record we have, it looks to me like the court excluded your experts entirely, so I don't see how you could win on summary judgment based on that. You don't have any experts. Your Honor, I would disrespectfully disagree with the way you're reading Judge Urbanski's opinion. Right. So show me how to fix that in my mind. And we cite to this in our reply brief where, because they make this argument in their brief, which is that the district judge... Right, and I understood it in their brief. I just didn't understand it in yours. What Judge Urbanski said... And this is at 4189 of the appendix. What Judge Urbanski said is that because there's no evidence... He said because there's no evidence that the fire originated outside of the facility, you're not going to be able to prove everything that flows from that, which is that a defect was a proximate causation of these injuries. So what he was ruling on was simply the antecedent question of, do you have evidence of where the fire originated from? And you claim you do have still evidence. Yes, ma'am. And it's totally independent of the experts. What is that evidence? That evidence I think you start with, and that's where I was trying to get into what we know. We know that Spangler was walking towards the door, and the first event that was leading outside towards the baghouse, and the first event that he registers is something in front of him, something from in front of him. He doesn't notice any sort of change in light or in terms of sound from inside the facility. He notices a bright light and an explosion from in front of him. That's a piece of evidence. Then there's the video that in our mind confirms that. You go from ambient. Does that mean it was in the baghouse that you're saying? It means that it was outside. It means it was outside. Yes, sir. And so on the question of fire origin, all we need is for it to be outside. Right. You don't have to do the cause of the fire as long as it's outside. As long as it's outside, we have satisfied our burden on that, and then we get to the next question. So what is your evidence about that? Evidence is Spangler. Yes. Video. Video that shows. Yes, but the video doesn't tell you one thing or the other. You have Spangler. Yes, ma'am. And I would respectfully disagree that the video doesn't tell you one thing or the other. I agree with the district court that the video isn't conclusive, but it is a piece of evidence. Let me put it this way. If you just had the video, that wouldn't be enough. I would probably agree with you. I think a really interesting question in this case is if all we had was Spangler in the video, would that be enough? So what do you have besides that? What we have besides that is Hodges, and so that's what the briefing has been focused on. Hodges is your best evidence? I hesitate to say best evidence because I think you have to view it all together. Is Hodges the one that the court found not credible throughout everything? Yes, ma'am. And your claim is, okay, that's fair cross-examination, but he said sort of, as many witnesses do, he said everything. He said this version, and he said that version, and he agreed and disagreed, right? He was looking through the thing above, right? Yes, sir. He was up on a scissor lift with a flashlight looking down this stretch of ductwork that goes directly towards the wall of the building, and then there's what everyone's called the flap, which is part of the backblast damper assembly. And he said he saw the flash come from over the flap. So that is what they rest their decision on. Because that's what he said, right? He said, I saw it from over top of it. Right. Which appears to be a physical impossibility based on the way this thing was put together. But then didn't he waffle and also say, well, it could be this side? I mean, as I say, I thought he said a number of things. Yes, ma'am. And if I could, Judge Thacker, let me walk you back a step or two. The testimony that you're focusing on is at page 2372 and 73 of the appendix. And he says, I could see over the top of it from the center up. Now, we know that the pipe, the ductwork was half full of dust. So whatever he would have seen, he would have had to have seen it from the center up. Because from the center down, it was just blocked with aluminum dust and other stuff. But if you go up further in that colloquy, the question that he's asked five or six lines up is, can you describe the dust that was at the end of the pipe? That's how they get into this colloquy, is can you describe the dust that was at the end of the pipe? And then he goes in and says, to me, the dust looked like this. And they said, then they get down to, that's what I'm trying to figure out. Where you saw that, could you see a gap on the side, the top, or the bottom? And he says, I could see over the top of it from the center up. So I believe you could read it to be referring to as the dust, as opposed to the damper. But even if you don't, even if you don't agree with me that that is a permissible reading of, taken in context of this really long deposition of this fellow, you know, as happens in every case, getting grilled by opposing counsel, if you construe that to say that it is the damper, I agree with you, he could not have seen anything over the top of the damper because it hinged at the top. That still doesn't mean he couldn't have seen beyond the damper. And that is what we're getting at with this notion of that's what matters. That's what is the issue in this case. Could he have seen, if you frame the question, could someone looking down this pipe have seen beyond the plane of the wall, which is where the flap is, into the damper housing which then tapers off to the outdoor ductwork? The answer is unequivocally yes. If it's propped open and laying on a pile of stuff, of aluminum dust and other material, and you have a small aperture that goes into a larger housing, there's going to be space at the side. And based on his testimony about it being, again, which you would expect, an uneven sort of accumulation, maybe it was even resting on one edge and there's some space up underneath it. Maybe there's not. I don't know. All difficult but possible. I mean, all difficult arguments maybe to make in light of his testimony, but maybe his testimony changes. But anyway. Yes, ma'am. And so, again, he can be crossed, and I'm sure he would be, rather extensively at trial on this. But my respectful suggestion to the court today is that there is not a single person in this courtroom who can say that when Mr. Hodges was looking down that pipe that he couldn't see beyond the plane of where the damper should be into the damper housing. Is that called the baghouse? Sir? The baghouse. What's the baghouse? He called it the baghouse. He said, I could see beyond the flap to where the plate. From the baghouse end and past the damper, there was a flash of a fireball. Yes, sir. And the next thing I know, I'm on fire. Yes, sir. The baghouse end, what he was referring to there is beyond the wall. Outside. That's outside. That's outside. And the diagram that is in the appendix at 4006 shows that when it goes out of the facility, the damper housing, the backblast damper housing is bigger than the ductwork that was going into it. Then it kind of tapers down and then hangs an immediate 90-degree turn, continues to the baghouse. And that's what he says I could see. I could see beyond the flap thingy, that's what he calls it, and says I could see essentially further down into that housing mechanism to where it starts to make a bend. And there's no one, I respectfully suggest, there's no one in this courtroom who can say that he's wrong. And that's what differentiates this case from Scott v. Harris, which is the main case they rely upon. And that's the Supreme Court case where it was a 1983 case where a police officer had run a fleeing felon off the road and rendered him a quadriplegic, and they sued for excessive force. And in his testimony, he says I wasn't endangering others. I was, you know, slowing down. I was using my signal. Yeah, sure, I was fleeing the police, but I was doing it safely. And unfortunately for him, there was a video of the event, a dash cam video. And so in that situation, the court could, the court years after the event could watch the video and say the record, you know, everyone agrees the record, the video was genuine, was, you know, accurately portrayed the events. And they could say, okay, there is a point in the record that blatantly contradicts your testimony. We don't have, this isn't a he said, she said. This is look at the video. And that's, and so, and they even said, you know, in the opinion they dropped a footnote that said see for yourself. Here's a link to the Supreme Court website. Go look at the video yourself. And so in those situations, yeah, those rare circumstances where there's something in the record that you can look at and say it is blatantly incorrect that what you said, you know, your version of events is just blatantly contradicted by something else that's in the record, yes, you don't have to just take one side's testimony, you know, at face value. That's not this case. Now, it's going to be increasingly more common as video becomes more common. So I do think video is going to change summary judgment practice in a lot of ways. But that's not this case. We do have video, but it certainly doesn't completely discredit Mr. Hodge's testimony. We believe it's corroborative. They, you know, I take it that Judge Motch thinks it's not as strong as I do. So it's a wash. But it certainly doesn't disprove what Hodges says, which is, and what Hodges says is I could see beyond the damper. I could see beyond the wall, past the flap, to the, you know, beyond the damper. And if it's propped open, he absolutely can see that. Judge Sacker, have I addressed all of your questions on what the district court did and did not rule? I want to make sure that I have. On the experts? Yes, ma'am. No. I'm still looking to find where, because what I'm looking at, the district court said your experts couldn't testify. And you're saying that, particularly as to cost, and you're saying that the district court still would have permitted your experts to testify on proximate causation. Yes, ma'am, because cause of the fire is not the same as cause of the injuries. Cause of the fire is what caused this thing to explode. Cause of the injuries is what about the construction of this baghouse assembly was defective that allowed, assuming the premise of it started outside, that allowed the fire to propagate back upstream. And those two things are the inadequate assembly of the back blast damper. Right. And you're saying that somewhere in this record the district court left that part of your expert opinion intact. I think it's by omission, Your Honor. I think it's the district court ruled. Well, was the motion to exclude your experts in their entirety? I believe it was. And the motion was granted? I believe the motion was granted in the opinion to the extent of origin, of cause and origin of the fire. I just don't think the district court got to the rest. I don't think Judge Urbanski said, and even if you ---- Let me ask you this. There's only a hearing on the motions, right? Is there any follow-up order on the motion to exclude, or is it just at the hearing? There's a written opinion. Right. So there were two hearings. And so I think the opinion is what you look at to see what the judge ruled. Right. And then he issues an order that says, for the reasons set forth in the opinion, so on and so forth. Maybe I misunderstood this case, but I thought that it rose and fell on whether this fire started outside or inside the building. For purposes of this appeal, I see my time has stopped. May I answer? You can answer that question. For purposes of this appeal, for purposes of what's before the court, that is what ---- yes. So it doesn't matter what caused it if it was outside the building? Absolutely. So whatever experts testify, that doesn't really matter if he can establish it's outside the building? Yes, ma'am. And so what evidence is there that it's outside the building? There's two ---- I've forgotten their names, but you were just talking about that. There's Hodges. And there's the ---- but is there expert testimony on that? No, ma'am. Well, the judge excluded that. That's what ---- That's been excluded. That's what's been excluded, and we did not appeal that. Your point is that since he improperly excluded the testimony of witnesses about it being outside the building, then his exclusion of expert testimony rested on that improper ruling. Yes, ma'am. And I think that's sort of the explanation for what ---- and, again, may I finish? Yes. My time is up. I think that's what happened is the majority of Judge Urbanski's opinion was aimed at the experts. He was undeniably unimpressed, and within the context of that ruling, he said, I don't think the testimony of Hodges is sufficient for this expert to rely upon. Once he had said that, he had kind of boxed himself in as to the, okay, put the experts aside. Is Hodges sufficient to get to the jury? And so I think that's what happened here. On origin. You still, I mean ---- Yes, ma'am, on origin. Once we establish origin, that it started out there rather than in here ---- That's it. That's it. Then we get to ---- we would still have to prove that the defects were a proximate cause. And you can't prove that without experts. Well, Hodges, can we? Well, and I think you can frankly look at that. Again, I'm way beyond my time, and I ---- That's all right. Go ahead and answer the questions. You don't have to keep telling us your questions all the time. The, first off, I believe that we do, we still have expert testimony on that point. Right. I think that Hodges would still be permitted, or Schloss, our experts, would still be permitted to testify about how the baghouse was improperly constructed and what happens when an explosion happens in a baghouse that's improperly constructed. And then you could look at the photos and see what happened here. And I agree with that. I was just trying to, it's unclear to me whether he entirely excluded your experts or not. And I believe his opinion, you know, is a question of interpretation on that point. Well, maybe you can, on rebuttal, look at his opinion, because you had said when you were just chatting with us in this time in which you've gone over, you had said to us, well, he relied on the fact that he excluded Hodges' testimony and then said the experts, of course, couldn't opine because they had nothing to opine on. They had no factual basis for it. So maybe there's somewhere you can find that. Yeah, I mean, in his conclusion he says, the opinions offered by plaintiffs' experts, plural, lack a reliable foundation and are therefore inadmissible under Rule 702. In the absence of expert testimony, there is no general issue of material fact. I don't. Well, but I mean, I guess what you're saying is the reliable foundation, since he excluded Hodges' testimony, there would be no foundation. There would be no foundation for origin. But if he hadn't excluded Hodges' testimony, there might be a reliable foundation. Is that what you're saying? Yes, ma'am. Or origin, but not the cause or design defect or proximate causation, which you need to prove your case. Yes, ma'am. You agree you need those things? I agree I need to prove proximate causation and defect. It's just that those are subsequent questions in the analytical process. First question is where did the fire come from, outside or inside? That's what the district court kicked us on. Okay, and I'm back to I agree with you on the you look to the opinion, okay, to find out, and that's what I'm trying to find out, whether the expert opinions were excluded. There was a motion to exclude the experts. I just read to you the conclusion, which was experts are excluded, inadmissible under 702. No, it doesn't say only for cause and origin, but they can still testify to these other things. At the very beginning of the opinion, which is what you look to, to what they're talking about, for the reasons stated herein, the court will grant the motions to exclude plaintiffs' experts and grant defendants much more summary judgment. The motion to exclude plaintiffs' experts was to exclude them in their entirety. I mean, and it's granted. And, again, my response would be for the reasons stated herein, so you have to look at what those reasons are. Thank you, Your Honor. May it please the court, good morning. I'm Monica Munday, and I represent Federal Mogul. Seated with me at council table and in the front row are Bevan Alexander, who are counsel for Defendant Carrington, Donald Morris, who is counsel for Kirk and Blum, David Hudgens, who is counsel for Defendant Dustex, and Daniel Sullivan, who is co-counsel for Federal Mogul. Let me move immediately to Judge Thacker's question on the proximate cause. In addition to the passage that you've recited, Your Honor, at the beginning of the opinion, there are three other places in the district court's opinion where Judge Urbanski found that there was no proximate cause. At page 4184, the judge stated, Plaintiffs argue that even if their experts are excluded, summary judgment is not warranted because they have competent lay testimony upon which a jury could rely in concluding that the fire and explosion originated in the baghouse and that their injuries resulted from the improper venting of the baghouse and damper's failure to prevent the fire from entering the plant's interior. The court cannot agree. The second spot is found. Well, I'm not sure. Since both are there, it's not that the court cannot agree. It could agree on one and not on the other. I mean, in other words, it doesn't agree on the whole sentence. So I'm not sure that's terribly helpful. Your Honor, we have. Let's hear your second one. Yes, Your Honor. We have two more passages that flesh this out as well. The court says that in light of the foregoing. Where is the next one? I'm sorry. 4188, Your Honor. In the final paragraph. In light of the foregoing, it is clear that without reliable expert testimony, plaintiffs cannot produce sufficient evidence upon which a jury could conclude that the ignition of the aluminum dust took place in the baghouse and that the damper and an insufficiently vented baghouse failed to protect the plaintiffs. That's approximate cause. At most, plaintiffs' evidence taken together and viewed in light, in the light most favorable to them, leaves the jury completely at sea as to the cause and origin of the fire and the explosion in this case. Then we get to the third part, which is 4189, the next page, and it's towards the bottom of the block quote. There is in this case simply no proof of a defect in the baghouse or damper that caused plaintiffs' injuries beyond the realm of conjecture, guess, or random judgment upon mere supposition. This goes to approximate causation. Now, clearly, the judge excluded the cause and origin opinions from these experts. Critical. Let's even assume that maybe the defect opinion of Mr. Schloss survived. Okay. Even with that, his proximate causation opinion did not survive. Is there any indication that the design and defect portion survived? Your Honor, there's really not. There's really not. But I think even if you assume that that defect opinion survived, it was absolutely dependent upon Mr. Schloss' opinion that the fire started in the baghouse. The cause and origin of the fire. Say that to me again. Yes, Your Honor. Mr. Schloss' opinion is based upon the foundation that the fire started in the baghouse. That opinion was excluded. His entire defect analysis depends upon the fire starting in the baghouse. So I do have to disagree with co-counsel that all they need to prove, assuming that the defect opinion survives, they cannot merely prove that it occurred outside the building. According to Mr. Schloss, if they're going to proceed on their defect theory, they must prove that the fire originated in the baghouse. And why do we know that? We know that because that's what Mr. Schloss' opinion was. He calculated the forces that would be created in the baghouse upon the fire originating there. He then said that because of the forces of that fire, it created all this pressure in the baghouse and that the defective venting did not stop that. And so, therefore, it moved into the duct. I think I hear your argument. But let's leave aside the other experts and leave aside, just focus on this one thing for a minute. If we have a fact witness saying the fire started outside the building and we have him, we have an expert saying it started in the baghouse, which is outside the building, I don't see why, as a matter of fact, that couldn't work. They don't have to be saying exactly the same thing, but the fact witnesses provide a basis for the expert to say they're consistent with each other. Now, I take your point about the other experts and about what the district court said, but just address that for me. But the problem is that that opinion was excluded. Schloss' opinion that the fire started in the baghouse was excluded. So what we're left with is solely lay testimony from the plaintiff. And let me, if I may, provide kind of the backdrop for what we're talking about in this case. But wasn't that testimony excluded because the district court improperly excluded the basis for it? The lay testimony. That's my problem. No, Your Honor. The district court independently analyzed whether the lay testimony was sufficient to meet the plaintiff's burden on a motion for summary judgment to come forward with. But if the district court was wrong on that, in other words, if he was wrong on excluding that lay testimony, we should find, as a matter of law, that should have been included. Was there a basis for expert testimony? In other words, was his expert testimony ruling contingent on the correctness of his lay testimony ruling? No, Your Honor. I think they were independent analysis that the district court undertook. Which one did he make first? He first made the Dawbert ruling, Your Honor, and he first excluded the expert witnesses. Then he examined whether there was sufficient lay evidence to meet the plaintiff's burden on cause and origin and concluded that there was not. But you see, he may have put the expert testimony first, but it's clear that the exclusion of the expert testimony rests on the fact that there's no basis for it because there's no lay testimony saying that this is what happened. No, Your Honor. According to the district court. The court first excluded the expert witnesses, and then it examined the lay evidence. And this is basically what it said. The district court said this evidence is not sufficient on its own. Who are you now? Oh, I'm not, Your Honor. Oh, I thought you were reading. No, I'm sorry, Your Honor. I'm not reading. All right, go ahead. But what the district court was saying is once the experts were excluded and were looking solely at the lay evidence, the district court said this evidence is not sufficient to create a genuine issue on cause and origin, which the plaintiff was required to prove. And so what the district court was basically saying was without expert testimony, your evidence is not of a quality and a quantity to create a genuine issue of material fact. Now, why is that? It's because the plaintiffs admit that they have to prove origin in this case at a minimum. I'm not going to talk about cause right now. They have to prove origin. They are asking this court to hold that evidence that did not support the admissibility of expert testimony on the question of fire origin is sufficient on its own to support a jury verdict. They are asking a jury to do what their own experts could not do. Now, why is this the case? And what evidence did the district court look at in examining Judge Mott's just the lay evidence? This is what the district court looked at, and it said it looked at the entire record, as it should, to consider whether or not a genuine issue of material fact was created. Number one, here are the undisputed facts. It is undisputed that there was static electricity coming from an ungrounded vacuuming hose that the plaintiffs were using to vacuum up aluminum dust, which is highly combustible. Mr. Hodges actually saw sparks coming from the end of the hose in the duct. We know that the explosion occurred merely seconds after Mr. Hodges asked Mr. Spangler to go turn down the power on the vacuum truck because of the static electricity. We also know that within milliseconds, the fire began in the duct work, and I agree it's disputed whether it's in the duct work, but that the fire began, and within just a millisecond, it was in three locations. It was in the duct work, it was in the back house, and it was in the fire truck itself. I'm sorry, the vacuum truck. Two of those localities were outside the building. One was inside. It is also established in the record that the defendant's expert has opined, and this has not been challenged, the defendant's expert has opined that static electricity was the ignition source in the duct where the plaintiffs were vacuuming at that time, and the plaintiffs, as the record stands, have absolutely no evidence to contradict that. Now, when we look specifically, let me move specifically to Mr. Hodges  Why is it that the district court can disregard Mr. Hodges' testimony? It is because it is both physically impossible and because it contradicts the record. And again, I think it's unfair to simply parse. Can I ask you this question? Yes. If we should disagree with you on that point, what does that do with the exclusion of the expert's testimony and the ultimate conclusion by the district court to grant summary judgment? Your Honor. Mr. Hodges, are you still entitled to summary judgment even if the district court was wrong with respect to its exclusion of Hodges' testimony? Yes, Your Honor, for a few reasons. First, because there's no evidence of proximate causation, and that's what we've already discussed and I'm going to discuss a little bit more. Did the judge pass on that? Second, yes, Your Honor, it did. The three particular passages in the record, the district court said there was no evidence of proximate cause, and that has not been appealed. You said there was something. You argue that there's an alternative reason that the judge didn't pass on for us to uphold for summary judgment. Yes, Your Honor. That's a more narrow proximate causation argument that relates to two of the defendants in particular. That argument is that because the flap, because there was dust, it's undisputed there was dust in the duct, and the flap was laying on top of the dust, that the damper and the inadequate venting, if you believe the plaintiff's expert, could not have caused the fire to come through. If the plaintiff's expert, you said, has been excluded and you're relying on him for the alternative basis. No, Your Honor. No, Your Honor. All the evidence I just told you has come from Mr. Hodges himself. He said there was dust in the duct. But you just quoted the plaintiff's expert, which has been excluded, but you want us to use that as an alternative basis for upholding the summary judgment. Your Honor, I'm simply arguing why proximate causation has been removed from this case. And, again, the trial judge ruled on proximate causation. It's not there. However, I'm assuming for the sake of argument that the defect theory of the plaintiff's expert alone is before us today. Now, going to the second part, Judge Motz, the other reason is that the plaintiffs have not appealed. I'm sorry that I'm not getting this, but I'm really, I think you have so many arguments to make and so much to tell us. If you could just explain to me, but just assume for purposes here, that it was error to say that, I think it's Bangler, maybe it's the other guy's testimony, Hodges' testimony was excluded, right? So it was properly in. And you're saying that has no effect at all. There still is a proper grand summary judgment here. That's correct, Your Honor. And the reason is this, because even if you accept Hodges' testimony at face value, the plaintiffs to proceed on their defect theory must show that the fire started in the baghouse. They agree on appeal that they must proceed. I thought if you accept Hodges' testimony, it started in the baghouse. No, Your Honor. Well, that's a reasonable way I read it. What he said, if you accept that, and get away from where the hinges and all of this, is that he saw it. Saw the fire, and then he was on fire. Saw it outside. That's where the baghouse was. If you accept, you have to give the inferences to the plaintiff. Your Honor. And if you accept that proposition, where are you then? Your Honor, I cannot accept that proposition. Well, you won't accept it. And that's right. And the judge wouldn't accept it either. But judges and you aren't entitled to make credibility determinations. Your Honor. On summary judgments, you have to give it to the non-moving party. Your Honor. The facts go to the non-moving party. The facts go to his testimony. And that was Judge Motz's question, I think. If we all three accept that the court was wrong about Hodges, can the summary judgment order still survive? Yes, Your Honor. Without going to your alternative theory. Yes, Your Honor. The record shows this. And if the court would look at the diagram as well that we have, it might be helpful. Between the damper and the baghouse, there is roughly 10 feet of duct with a 90-degree turn in it. And I'm speaking only from Mr. Hodges' testimony. Mr. Hodges' testimony, what's been recited earlier, is that he could see back past the damper and into the curve. He never, ever said that he could see into the baghouse. And, of course, he could not because of the 90-degree turn. So there is no evidence, even if you accept Mr. Hodges' testimony, there is no evidence that Mr. Hodges can establish that it started in the baghouse as opposed to in the ductwork. And, again, if they're proceeding on the theory, which is what they have said in their briefs, that it was a defect in both the venting in the baghouse and the damper, and they're basing that on Mr. Schloss' defect testimony, that testimony rests on the foundation that it started in the baghouse. So, in other words, Your Honor, Mr. Hodges' testimony, even granting him every inference possible, he never says that he saw the fire come in the baghouse. Do you agree we have to grant him every inference possible? I believe so, Your Honor, that is not inconsistent with the physical record. So I'm moving on. But not inconsistent with the physical record, taking his testimony, and I've looked at this chart more than I would like, that it came from the baghouse would be consistent with his testimony. I strongly disagree, Your Honor. I do not believe that that inference can be drawn at all. What he said was that he could see, Your Honor, it's pages 2312 and 2320 of the joint appendix. He says that he could see past the damper and into the curve. The curve is four feet away, and let me provide citations for the Court's benefit here. The turn is four feet past the damper. That's at JA3198. You had to have some witness that said it didn't take place during that four feet. Is that what you're saying? No, Your Honor. In other words, he had to say it took place in the baghouse and that you're saying it could have taken place in that four feet, even if we accept his testimony. No, Your Honor. Actually, I'm past the four feet. Because past the four, you get it's four feet from the damper to the 90-degree turn. That means that because there's 15 feet from the damper to the ductwork, and that citation is 410, there's 10 feet past the curve. He never says he could see into the curve, and then it goes into the baghouse. So, Your Honor, in a products liability case like this, involving highly scientific and confusing evidence about fire, I don't understand how this works. I don't know what aluminum dust does. I don't know how it reacts. Neither does a jury. Under this scenario, what the judge was saying is, without an expert to put the fire in the baghouse, you really had to have more evidence than what Mr. Hodges could offer under the circumstances. It's merely an acknowledgement that we are dealing with a highly scientific issue. My problem is, I think you're right. I think you did characterize that correctly. But I don't think that the district court appreciated what the witness could testify to. That's where I'm at. Yes, and, Your Honor, and I hope that I've answered the question with regard to why, even if this court has concerns about how Judge Urbanski dealt with Mr. Hodges' testimony, that even if you accept everything that he said and give the plaintiff every inference, it's still not going to be enough to create a genuine issue of material fact, and that must be countered against the undisputed evidence that we know in this case, and that evidence, again, being there is an undisputed ignition source in the ductwork at the end of the hose seconds before the fire starts. And the plaintiffs have offered, even through Mr. Hodges' testimony at face value, no evidence to even try to explain that. When left with this, a jury has two possible causes for an accident. One may be that it started in the baghouse. The other one, which is the defendant's evidence, which is that it started in the ductwork. If under those circumstances, if there are two possible causes, the plaintiff must come forward and prove with reasonable certainty what caused their injuries, and that's different than saying the cause of the fire. We're going to just talk about the cause of the injuries. And with that, when you look at the evidence, as the judge did, and that's why it's so important that he looked at the whole record, when you look at the evidence like that and you look at what the defendant has presented and you look at what the plaintiff is left with, with just the lay evidence. Because no experts, and the appellant didn't appeal the expert ruling. Correct. Correct, Your Honor. Correct. That's why the judge found that it didn't create a material issue of disputed fact. And so, and it wasn't that really that the district court dismissed Hodges' testimony lightly or dismissed the experts lightly, even though that's not on appeal. There were seven hours of hearings on two different days, and the district court issued a 34-page opinion. It was highly engaged in the questioning during the oral arguments. So the court very carefully looked at this record, and it would also be important to note that the district court also was able to view an exemplar of the damper itself, the duct, at the summary judgment hearing and was able to take that into account in ruling on the case. But that's where we are. That's where we are in the case, and that's why the record looking at both sides simply doesn't create enough evidence from which a jury could move out of the realm of speculation and make a finding for the plaintiff. If there are no further questions, I would ask that the district court's opinion be affirmed. Thank you very much. Thank you, Your Honors. I want to get back to Judge Thacker's question about where in the district court opinion she can look to determine what the judge did rule on and didn't rule on. Unfortunately, the copy that I have here isn't the appendix copy. It's the district court copy, so I'm going by pages of the district court. That's all right. We have pages there. Page four of the district court's opinion at the top. It says defendants assert that plaintiff's experts' opinions on origin and cause should be excluded as unreliable pursuant to federal rule of evidence 702. As such, federal mogul Carrington and Dustex have moved to exclude the plaintiff's experts, and all defendants have moved for summary judgment. I think that's where you can look to see that's what the judge was ruling on. This was not unlike most large civil cases in which there are summary judgment opinions or motions or expert motions aimed at all sorts of things, taking shots at different elements of the plaintiff's case, and the district judge chose the first one. When you get an order from a court, what do you usually look to to find out what the bottom line ruling was? Somewhere in the middle of page four? Or in the first and last two paragraphs? I look to the order that says for the reasons stated in the opinion issued of even date, or I forget exactly how this was ruled, and so then I go to the entirety of the opinion. And I think my point, Your Honor, and so I have a second point for you. The other argument is structural. If the district judge was excluding the entirety of the expert's opinions, and if that means game over on all questions, not just origin, then part three of the district court's opinion is entirely superfluous. If that's what the district court was doing here, he would have stopped, because part two is the ruling on the experts. And at the end of part two, he says experts gone. If that was sufficient to result in summary judgment on all questions, then him going on to part three and talking about, you know, well, even if we get rid of the experts, there's still the lay witness testimony. That would be completely unnecessary, Your Honor. And so I would respectfully suggest that that's another place you can look to say that that's not what Judge Urbanski was doing. He was ruling on one question, cause and origin of the fire. He just didn't get to the next issues. If this case is remanded, I would reasonably suspect those are live issues. But that's not what Judge Urbanski ruled on, and so that's not the ruling that's before the court. To opposing counsel's point that we have failed to rule out, you know, if there's two possible causes, I do think that, you know, if you accept Hodge's testimony, you have ruled out their cause. Their cause is that it started inside the facility. So Hodge's testimony excludes their cause? Yes, sir. She said you had to prove it by reasonable certainty. I think we have to prove it by preponderance of the evidence. I thought the law, at least in West Virginia where I come from, is preponderance. Yes, sir. That same thing in Virginia. Unless something really drastically changed. That's where we got it. But reasonable certainty sounds like a criminal case. Well, I thought her argument was that even if we accept your witness's testimony, there's no testimony that says that it took place, that you also have to show that it took place in the baghouse. Do you agree that you have to prove that to succeed here? I think the question is what are people referring to as the baghouse? I think the baghouse assembly is everything, as I'm envisioning it, the baghouse assembly is everything from the wall of the facility out.  That looks like a lock. No, ma'am. It is the backblast damper. It starts with the backblast damper, which is at the wall of the facility, and proceeds however many feet into the large structure that you can see at the bottom right of that. I'm on 4006. Yes, ma'am. That's where I'm at. I don't know what you mean by that. See the little yellow thing? Yes, ma'am, at the top. Okay. Now, so you're saying that the pipes that go into that from the bottom, from Hodges and Bonds, that even if he, as I understand it, what she has said is, okay, best case for you all, he couldn't show it went in the area after the curve. Yes, ma'am. And you would have to show that the fire could have started there and not in the baghouse, which is marked in yellow. And that's what she says. And I guess I now understand that. That wasn't really argued below. But do you have to prove it was in the baghouse? I have to prove. It depends. I guess technically the answer is it depends on. The yellow thing is the baghouse, and your claim is that that's improperly constructed, right? I think the question is what are we defining as the baghouse? We're defining as the entire assembly, because that's what Carrington was brought in to design. Carrington was brought in. Carrington oversaw, was the owner's rep on designing from, you know, that whole system, which includes the work that Dust-X did on the baghouse and the work that Kirk and Bloom did on the backblast damper. So we are viewing it as one system. And that was quarterbacked by Carrington and then subbed out to two different entities. Dust-X did the actual baghouse facility. And did someone say that? Yes, ma'am. It's in the district court's opinion. That it includes this entire assembly thing. Well, I mean, again, that's what everyone was shooting at here. Not everyone. So this diagram, I mean, just has a black box around what is labeled the baghouse, and then down below inside the building are other, you know, the overhead pipe and those sorts of things are separately labeled, not as part of the baghouse. And then in the enlarged diagram, it shows the backblast damper with, you know, sort of points in the direction of the baghouse, not that that's part of. Yes. You see the thing where it says baghouse airflow? Yes, ma'am. And my colleague is absolutely right. That wire or tube is labeled, well, backblast damper. Thank you very much. And it's not labeled baghouse. Well, yes, Your Honor, and we have brought a claim. One of the defendants in the case is Kirk and Bloom, who is the manufacturer of the backblast damper. So we are suing them on behalf of, for all of that. And I believe that if you look at the box up at the top, you know, that encapsulating baghouse, I believe that, I mean, everyone understood that that included, that that assembly included the backblast damper leading into the baghouse. And so I believe that was what's before the court. And, again, if there are differentiations to be made between the defendants, again, the district court didn't get to that. The question that the district court decided was, did this fire come from outside or inside the facility? If the district court erred on that ruling, on excluding Hodges' testimony, I think we would request that the proper course of action is to remand for further proceedings. Well, did the experts testify to something beyond that, outside or inside the facility? I'm not sure I understand your question. Yes, the experts gave testimony that the backblast damper was defectively designed because it didn't use the right gauge of steel and it didn't use continuous welding, but rather used spot welds, which made it a weak point. You haven't appealed any of that? We excluded the experts whose testimony was excluded. What did they opine? They opined numerous things, and our position is a portion of it was excluded, Your Honor. I understand that you say a portion of it is, but she says the whole thing was, and it looks to me like the whole thing was. And does your case fall, then, if that's the case? Because, Your Honor, I really haven't thought through that question. I believe that you can look at the picture of the backblast damper and see that's at 3650. You can see that it's blown apart, that it's pulled away from the wall, and we believe that that would allow a juror to look and see, okay, when this thing exploded, it pulled away from the wall, which allowed the fire to get into the facility. A juror on their own. Yes, ma'am. And that is why the district court said, in its opinion, that the juror has just left a C here. I believe the district court said, in his opinion, the juror has left a C as to where the fire originated. Okay. Thank you, Your Honors. Thank you. We will come down and greet the lawyers and then go to our last case. We'll take a short break and then go to our last case. All right, then.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker